Good morning. May I please the court? Artem M. Sarian for the petitioner, Mr. Mangasaryan. This case was previously remanded back to the agency to address inconsistencies in dates. In fact, when the immigration judge made the original decision many, many years ago, almost 10 years ago, the judge said the following. She said that the petitioner was consistent as to the events but was inconsistent as to the dates. Previously argued before this court that it's a confusion between Persian and Gregorian calendar that created this. And petitioner testified as to the reasons why he was unable to testify about specific dates in the Gregorian calendar. He specifically said that he had education in Iran. He had Persian calendar in his head. He had to recalculate all the time he was asked about the dates. So this court sends it back to the agency and says, look, just figure out if the explanation by the petitioner, explanations were reasonable. The board comes back, instead of sending it back to the immigration judge, since she already ruled as to the events he was consistent, he was inconsistent as to the years. They say, no, he wasn't consistent as to the events, and bring a simple example. Why? They emphasize and they say the following. It's administrative record four. It's page of board of immigration appeal decision. They say the following, that he testified that one of the events was whole year after the incident at the store. Can you just tell me, as someone who's totally unfamiliar with the Persian calendar, I guess, what's the conversion process like such that you could be off by a year? To be completely honest, I have no idea. But I looked it up, and even though this court specifically ruled that Wikipedia is not a source, I looked it up. Just like your client doesn't have any idea. Well, my client had idea about Persian calendar, not the Gregorian calendar. I was raised in the Gregorian calendar. Nevertheless, the Persian calendar appears to be based on a specific event. It's a spring equinox. Versus Gregorian calendar is based on the rule. It's just simply the rule. We apply the rule. So every time they have to recalculate based on when the spring equinox is in this specific year. So there's certain numbers of days for each year they have to add to the Persian calendar to get to the Gregorian calendar. So every time he's asked about the year, he's doing this mathematical calculations in his head, and trying to get whether it's 98 or 99, 98 or 99. But the problem is, the judge fed him one year rule. Judge said the following. She said, so it was the whole year after the time the incident at the border and incident at the store occurred. And he said, yes, it was a year. He said, yes, it happened. So she's leading him into believing it's a year, and he's doing this mathematical calculations. And he says, look, I'm not good at these numbers. All I know is there's incident at the border, then I'm complaining about the border incident to the authorities, then I'm getting threatening phone calls. There is a store incident when they come and beat him up. And then he complains again, and they come at his home, and they beat him and his wife. He knows the sequence. Judge admits he knows the sequence, and the sequence is correct. But the incorrect is he jumps from 98 to 99, trying to recalculate the years. Well, all the board should have said, look, it's up to the judge to decide. She already admitted the sequence was proper. It's just the numbers, numbers 98 or 99 was improper. They said, we're not going to accept it. He's inconsistent because he's jumping here, up and down. And they sent it back. Well, as a result, we're back before this court. Let me ask you this. If we were to conclude that your client is credible and just flat-out reverse the adverse credibility finding, do we have any holding below with respect to if the story is believed, that the mistreatment rises to the level of persecution such that he's eligible for asylum, or do we have to remand under Ventura? Well, I believe this court has to remand it for two reasons. Number one, judge ruled there is no nexus. Board explicitly refused to rule whether there's a nexus or not. An original Ninth Circuit court said there is instances of the nexus, and we argued in our brief why there is a nexus. They simply refused to answer that question. They said, we're not going to do it. Credibility is negative, and therefore, you know, just set us on our merry way. Yeah, the prior panel said it could provide a nexus. Right, and then we argued in additional briefing why there is a nexus. But you would say if we're not persuaded by the BIA's rationale this go-around, that we should just remand and order the BIA to deem your client credible? Well, I wish this court could have ruled, but the rules are that once you overturn the credibility and the issues that are not resolved by the agency, you know, have to go back to the agency. Well, but we could send it back. Yes. Hang on just a second. The IJ gave more reasons than just this one that the BIA relied upon for finding your client not credible. We could send it back for the BIA, if it wanted to, to evaluate those other reasons, I suppose. What I'm asking is, I assume you want us just to remand with an order that, at this point, your client should just be deemed credible and they should reach the court. That's what I want. I want the court to resolve the credibility issues and then send it back to the agency to decide on other issues. If I may, just reserve the ballot for my time. Thank you. Let's hear from the judge. Good morning, Your Honor. May it please the Court, Eric Anderson representing the Attorney General. Petitioner's inconsistent testimony about the sequence and interval between events that happened only 18 months before the time he was testifying is substantial evidence supporting the adverse credibility finding in this case. His explanation that it had to do with a conversion from the Persian calendar to the Gregorian calendar does not explain the problems arising from the, particularly the interval between events and the petition for review should be denied. Are you able to explain the difference? Yeah. Yeah, give us a little shot of this, how that works. I did not. I know even less than Mr. Sorry. You know, I find this difficult. I've got lawyers on both sides whose argument is, it either is or is not a factor that you convert or don't convert, and neither one of you seem to have any notion as to how you might convert. Well, Your Honor, my position is that the record contains no claim that when Mr. Mangasarian referred to a seven-day period, approximately 30-day period, and approximately 30 days. But he said that he wasn't good at converting these things, and it should be understood in that context, didn't he? As to the absolute dates, I understand that's an explanation. Yeah. He has not said that date. I mean, we're not dealing here with, not to be flipped, but the Mayan long count was a couple of years ago. It may as well be. That was a different year. You know, they were measuring something else. We're dealing with lunar cycles, cycles around the sun here. We're dealing with time periods. There's no claim that we're not dealing with time periods that are the same between the two calendar systems. I reread the transcript to the hearing last night, and it's very clear early on that the petitioner is having trouble with dates, is having trouble with sort of figuring out 98, 99, whatever it is. And as the thing goes on, it's clear that the IJ is just on him all the time. And instead of sort of saying, okay, slow down, it's all right, it confuses him even more, the story as to what happened. And in my view, the sequence in which it happens, not the timing of the dates, but the sequence in which it happens is pretty consistent. And the detail that he gives in terms of what's happening and so on, you know, I've read an awful lot of these transcripts in 15 years. And maybe I'm no better than the IJs, and the IJs themselves will often say, you know, the best I can do is make a guess. But this does not read like a memorized story, which you often get from the liars, and then they just can't remember the damn dates. This one reads to me as though I've got a man who's genuinely confused. And not lying. If I could take the points. The immigration judge in this case was fulfilling his obligation to clarify the record. I'm sorry, she was, my apologies to her, but she was fulfilling her obligation to clarify the record. She reminded him several times, be sure of what you're giving me. She gave him the opportunities. When things became unclear, she said, now let's clarify things. Well, she did in a sense, but if you read the scheduling colloquy before the actual hearing, she's really pretty, I'll say hard-nosed. She gets an opening in her calendar, which is just a few weeks off, and says, I'll give you this, or you're going to have to wait a very long time. And he's got problems with his family in danger and all kinds of things. There's no claim that his family was in any danger. Pardon me? There's no claim that his family was in any danger here. He feels some urgency in coming, and it's very clear in that discussion that this is not going to give him very much time to prepare, but because she gives him the choice, and it's very sort of, you know, my way or the highway, I'll give you this hearing in just a few weeks, or you're going to have to wait a year, and he takes the hearing in just a few weeks. Yes, he did. I take from that, you know, okay, this guy is not prepared in the way that he would have been. Your Honor, at that time he was represented by prior counsel, not by Mr. Sarian, and there was the board, when first disposed of the case, Mr. Sarian, had the board reopened because there was concerns about the quality of representation. My point is a slightly different one. This I.J. that you're describing as having given him being very careful, take your time and so on, this is also the I.J. who pressured him very severely to take a hearing date before he was going to be fully considered. She offered him the option, Your Honor. Well, she offered him the option, but if you reread the transcript, you'll realize it's an offer that's very hard to refuse. Let me, if I may, since we have some problems with the dates, if you put that to a side for the moment, and let's assume that the date issue is not going to fly, Judge Watford pointed out that there were other points, aside from the confusion on the dates, that might support the government's position. Do you agree with that? Not those on which I can defend the current board decision, but, yes, there were concerns about his story about his arrival at the border checkpoint and the merchandiser's arrival at the border checkpoint. The immigration judge was not satisfied that he testified credibly because. Okay, but that was not in the current BIA decision, right? The current BIA decision rests wholly on this date issue, right? Yes, Your Honor. So if we conclude that there was not substantial evidence here showing that he was not credible, then what do we do, send it back for yet another round? Do we conclude that that issue is off the table and you just start afresh, or what do we do? I would urge an open remand. If this Court finds that a reasonable fact finder would be compelled to conclude that the explanation, the date explanation does away with that issue, then obviously we can't rely on the date issue anymore. But there are other factors in the immigration judge's decision. There's got to be some law on this. If the BIA has had two shots at this, which it has, and it relies both times only on the dates, even though it's got other grounds on which to find adverse credibility in terms of what the IJ said, you're saying that we're going to – I mean, this case has been around for a long time. We're going to send it back on an open remand? There's got to be some law that says at some point we look at the reasons the BIA relies on them, and if it has declined to rely on reasons relied on by the IJ, we don't get to say to the BIA, you know, here's a third chance you can now rely on reasons for two times you never mentioned. I'm not aware of them, Your Honor. I know to respond to a point that Mr. Mangasari made in this Court's Powell decision, they affirmed the ability of the Board after an IJ's adverse credibility finding to raise new reasons for finding why the adverse credibility finding should be sustained or new reasons to find him not credible. You're right on that. I mean, I've done that myself. I've been on panels where we've done that, but this – I agree with Judge Fletcher. This just seems like you've had two shots – not you, but the Board has had two shots at this. But at some point, there does need to – this just has to come to an end, and we need to move the case forward. You know, this Court does have some body of law on the – well, I guess the deemed credible case law would be different, because there, that would be – you're just wiping – well, I'm not sure I can answer the question Your Honors are asking, but. I know in some circumstances we do remember, but in a case like this, I'm not sure we've got a – I don't think we have a – listen, you've got a third bite at this apple. Well, fortunately, Your Honor, I don't think we need it, because I think this decision should stand. Well, let me ask you this. I only saw one place – one place in the entire record where arguably the – there could be an inconsistency as to the interval or the sequence of events that didn't turn on a confusion over the dates, and that's at AR-194, where he gives this ambiguous answer. It happens, yes, in response to F.J.'s leading question. Your Honor, I would point the Court to about ten lines before that where it has been pointed out to him for the first time that there's been a sequencing problem. Okay. I'd like to read the line. I've got it right in front of me. What page are we looking at? 194, I believe. AR-194. Okay. He pointed out to him that there's a sequencing problem. He doesn't – Okay. Hang on, hang on. I'm slow. Okay. I've got 194. Where are we? I don't have the line in front of me, Your Honor, but it's pointed out to him that he said that July 13th came before the 23rd, and his answer is it wasn't in the same year. When the judge follows up with her leading question, she was clarifying his own answer that he brings forth for the first time. He says it was a different year. Any ambiguity in the it happened, yes, answer is only a clarification, a confirmation of the point that he made five or six lines previous. Let's just take your point. Let's assume that there's this one instance where it's inconsistent. Under Singh v. Gonzalez, and I realize there are a gazillion Singh cases, this one is at 403 Fed Third at 1090 through 91. We said the ability to recall precise dates of events years after they happened is an extremely poor test of how truthful the witness's substantive account is. And also in Bandari v. INS, we held that a single discrepancy with respect to where Bandari was beaten could not form the basis of an adverse credibility finding in light of otherwise consistent testimony on that topic. Now, I realize these are slightly different. There's some others as well, but I guess I'm having some trouble, and apparently my colleagues are as well, relying upon what may be a single clear inconsistency in terms of the year. What would you tell us to do in that circumstance? Your Honor, I would find that there is substantial evidence supporting the — I'm over now, but to answer your question — Just answer the question, then. That there's substantial evidence supporting the Board's determination that there's a great difference between a month and a year, and that under this Court's technical decision, one inconsistency going to the heart of the claim is enough to support the decision. You think this goes to the heart of the claim, that one inconsistency? It makes it more likely that the event didn't occur at all. Yes, Your Honor. Thank you. If I may add to Bandari and sink also the case of Zahedi, which is 2000, that specifically said — this Court specifically said that the confusion in dates can result from discrepancies between calendar systems. So just an additional argument. Nevertheless, going back to administrative record, page 194 and 95, when this 1999 and 1998 problem occurred, he attempts to reach to his passport, and he says, the incident happened after my last return from Iran. And he grabs the passport, tries to look at the dates. And the judge says — here it is. It says, sir, don't look at your passport. All he's trying to do is to refresh his recollection. He's not trying to read from something to just read it back to the judge. He knows it's a last entry. He knows it happened the same year, and he's trying to read the stamp. The stamp is on the page AR370 that specifically says May of 1998. That's his last entry into Iran, and he leaves at that time. That's when the sequence happens.  And the counsel should have been objecting vigorously and saying that, look, he's not looking at his statement. He's looking at his — that wasn't allowed. But back to the court's point, in about two weeks, it's going to be 14 years that this case has been litigated. So I implore the court to overturn the negative credibility and send it back to resolve this situation. I have one question. I'm rereading this early exchange about scheduling in front of Judge Bradley. Which page are you on? Well, I'm not sure you need to see the page. The scheduling hearing is on March the 24th. She is — I.J. is offering a date on April 3rd, so less than two weeks hence. And she says something about this being an expedited case such as yours. Do you know the basis on which this was an expedited case? I assume because there was some danger involved by the government. There was not. In 1997, Congress passed a law that all asylums have to be ruled in 180 days. Nevertheless, it's a fictitious date because if the respondent requests — on that time, respondent now is a petitioner — requests and continues that attributed — the delay attributes to the alien, that 180-day stops. It no longer becomes an expedited. So it's just the numbers and expeditiousness, of course, doc. So on March 24th, she offers a date on April the 3rd and says, if you don't take this one, I'll do it June 2001, so more than a year later. That's correct. But that's the pressuring I'm referring to when I say he did not have a lot of time to prepare. I practiced before this judge for many years. She's very fair, but she rules with an iron fist, so he had to go with her. Okay. I just want to have one clarification here. We've talked about the general problems of the calendar. We've talked about the cases where there's a single issue where there seems to be ambiguity. With that in mind, I'd like to ask again from your perspective, I think you said under Ventura that if we agree with that, we need to send it back to the BIA, but to do what? To resolve the issues of nexus and persecution. Okay. So the previous panel of this court remanded an open record under Solo Olarte, and they already had a shot at this, and they, without reading their minds, I believe they made their decision, full record. The original BIA decision was just affirmation without opinion. They didn't want to deal with it. Okay. Thank you very much. Thank you both sides. Magnessarian v. Holder now submitted for decision.
judges: Fletcher, Smith, Watford